IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL EUGENE THOMPSON,       )
                               )
          Petitioner,          )
                               )
vs.                            )      CIVIL ACTION NUMBER
                               )
TOMMY HERRING, Commissioner    )          94-C-2343-S
of the Alabama Department of   )
Corrections,                   )
                               )
          Respondent.          )


## MEMORANDUM OPINION DENYING
## PETITION FOR WRIT OF HABEAS CORPUS


In this death penalty case by a petitioner in state custody, the court has committed two reversible errors: (1) it granted an evidentiary hearing on the voluntariness of Petitioner Michael Eugene Thompson's confession, and (2) it orally indicated on the record that it would grant the habeas writ based on its finding that the law enforcement officials obtained the confession by deceiving Petitioner that Shirley Franklin had been arrested and by promising not to prosecute her. Upon a complete review of the record and the briefs of the parties, the Court concludes that to the extent that the factual basis of the allegedly coerced confession was not developed in the Alabama state courts, the factual predicate for the claim could have been presented in those courts. The Court also concludes

that the facts developed at the evidentiary hearing, even as orally dictated into the record at the conclusion of the evidentiary hearing, do not establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Petitioner guilty of capital murder. Cf. 28 U.S.C. § 2254(e)(2)(A)(ii), (B). Under these circumstances, the granting of an evidentiary hearing and the issuance of a writ based thereon would be improper. As shown in the discussion which follows, all of Petitioner's claims are either procedurally barred or inconsistent with unrebutted factual findings made by the State court.

Though legally irrelevant, this judge is personally opposed to the death penalty. Prior to the seminal decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726 (1972) he was the key contact in Alabama as part of a national effort to end the death penalty. In the Alabama Senate following the Supreme Court's decision in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909 (1976), he led the unsuccessful opposition to the restoration of the death penalty in this State. But once he donned the judicial robe and took the oath of office, however, his personal opinions on capital punishment became quite besides the point. For it is his duty to apply the laws as Congress has written them and the Supreme Court has interpreted those laws and the Constitution. Where conscience or personal preferences interfere with his performance of that duty in any case, it is the judge's duty to disqualify himself from that case. This judge has not yet reached that point. Rather, the Court deems it more appropriate to carefully scrutinize the record in capital cases to insure that the constitutional rights of defendants in capital cases have not been violated.

2

The Court has carefully considered the record in this case and finds that Petitioner's constitutional rights were not violated. Ample evidence, even without this pre-indictment confession and his confession to the jury, fully justifies his conviction of capital murder. The imposition of the death penalty is not at odds with controlling Supreme Court precedents. Not without significance to this judge, the defendant's guilt for this especially heinous and atrocious crime has been proved beyond a reasonable doubt. The justification for the imposition of the death penalty has been established clearly and convincingly under the controlling constitutional principles.

I

The Alabama Court of Criminal Appeals found the following facts:

On the night of December 10, 1983, the [petitioner], Thompson, proceeded to the Majik Mart in Attala, Alabama. One Maisie Gray was the only person working in the store that night. When the [petitioner] arrived at the store, he went into the store and bought a "Coke or a beer". He then left the store, proceeded to his car where he picked up his .22 caliber pistol and reentered the store. [Petitioner] then forced Ms. Gray to empty the cash register. Thompson then took Mrs. Gray outside the store, forcing her into his car and left the area. After driving around for some time, Thompson took Ms. Gray to a well in Blount County. He then forced Ms. Gray into the well and, according to his own statement, he shot into the well several times. Thompson then left and proceeded to the home of Shirley Franklin with whom he was living at the time. Once there, he picked up some more bullets for the pistol and told Shirley to go with him. The [petitioner] and Shirley then proceeded back to the well. The [petitioner] shot into the well seven or eight more times. Thompson denied this statement during trial, testifying that Shirley Franklin had done all the shooting into the well.

3

> Thompson and Franklin then returned to their home. The next day
> Thompson took the pistol, which he and Shirley had cleaned, to another
> well and threw it in there. The body of Maisie Gray was discovered on
> January 5, 1985. The Department of Forensic Sciences was able to
> make a determination as to the cause of death, i.e., multiple gunshot
> wounds to the body of the victim.

*Thompson v. State*, 503 So.2d 871, 874 (Ala.Crim.App.1986), *aff'd*, 503 So.2d 887

(Ala.1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 204 (1987).

On January 5, 1984, Petitioner was arrested by law enforcement officials of

Etowah County, Alabama, for the murder of Maisie Gray. He initially declined to refuse to

waive his *Miranda* rights and talk to the Sheriff or his deputies. On the following day, after

a visit from Shirley Franklin, he gave a taped confession to law enforcement authorities of

Etowah and Marshall Counties, in which he admitted to the robbery, kidnaping, and murder

of the victim. He made no reference to Shirley Franklin in this statement.

In presentation of the State's case at trial, Petitioner's taped confession to the

Etowah County Sheriff was played to the jury. A Blount County investigator for its Sheriff

Department, Larry Fowler, testified that on the day of his arraignment, Petitioner waived his

rights and gave a separate confession to him. Shirley Franklin testified against the defendant.

After the State rested, Petitioner testified in his own defense. Under oath, he admitted that

he had robbed the Majik Mart, kidnaped Maisie Gray, and threw her down the well.

However, he denied shooting Maisie Gray; he testified that Shirley Franklin had

accompanied him and had fired the fatal shots into the well where Gray had been thrown.

4

The jury convicted Petitioner after brief deliberations and recommended a death sentence. The trial judge, after hearing evidence at the penalty phase of trial, imposed that sentence.

As noted earlier, Petitioner duly appealed his conviction and sentence to the Alabama Court of Criminal Appeals, which affirmed. The Alabama Supreme Court followed suit; and the United States Supreme Court denied certiorari.

When his direct appeal had been exhausted, Petitioner filed a post-conviction petition under then Temporary Rule 20, now codified as Rule 32 of the Alabama Rules of Criminal Procedure.[1]  An evidentiary hearing on the Rule 32 petition was held before the same judge who presided at Petitioner's trial.  After hearing the evidence, the Rule 32 judge made extensive findings of facts on most of the disputed issues raised by the pending habeas petition.  He denied the rule 32 petition. On appeal to the Court of Criminal Appeals, his decision was upheld.  The Court of Criminal Appeals adopted the findings and conclusions of the Rule 20 judge as its own.  *Thompson v. State*, 581 So.2d 1216, 1218 (Ala.Crim.App.1991).  The conviction and sentence of death were again affirmed.

This habeas petition followed, pursuant to 28 U.S.C. § 2254.

## II Consideration of Claims

Petitioner raises twenty-one claims in his habeas petition.  Each one of them will be dealt with separately.

---

[1]  For the sake of convenience, the post-conviction proceeding will hereafter be referred to as the "Rule 20" and the presiding judge at the proceeding will be referred to as the "Rule 20 judge."

A. First Claim

The first claim is (listed in the petition as Section IV, at p. 13) that the admission of his taped jailhouse confession to the Etowah County Sheriff was involuntary and in violation of his constitutional rights. That claim is based on the argument that the confession "was secured by a combination of threats, promises, trickery, deception and psychological pressure." The argument, in turn, is based on the petitioner's testimony at the improvidently granted evidentiary hearing in this Court. Petitioner testified that he gave the confession only because he had been deceived by the Marshall County Sheriff and Shirley Franklin into believing that unless he took total responsibility for the crimes, his beloved girlfriend Shirley would be charged with the crimes and possibly sent to the electric chair. He relented from his initial and continuous insistence on his right to remain silent and testified only to save Shirley from prosecution.

After hearing all of the evidence which the parties wished to offer at a hearing outside the jury's presence prior to admission of the confession, the trial court found the confession to be voluntary. This factual claim was adjudicated on the merits, *Thompson I*, at 877, and it neither unreasonably applied federal law as established by the United States Supreme Court, nor was it the result of an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Moreover, the factual determination that the confession was voluntary is entitled to a presumption of correctness.

6

Further, as alluded to at subsequent points in this opinion, the trial judge found Petitioner is not a credible witness. This finding is likewise entitled to a presumption of correctness. Petitioner's testimony at the federal evidentiary hearing, being found by the state court to be incredible, is not the "clear and convincing evidence" required to rebut the presumption of correctness." This Court erred by implicitly treating it as such following the evidentiary hearing.

The first claim must be denied on the merits because the admission of the taped interview was, at best, harmless error. The testimony of Shirley Franklin, coupled with the other evidence independent of Petitioner's confessions, would have supported the jury's verdict and the Court's sentence.

B.  Second Claim

Petitioner's second claim is unclear. In the habeas petition, Petitioner alleges that Petitioner was denied his constitutional right "to a full and fair hearing outside the presence of the jury as to whether the statement had been voluntary." Petition, p. 14. In his supporting brief, however, Petitioner concedes that a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1974 (1964) hearing was held by the trial court. His complaint, however is that the State only called one witness, the Etowah County Sheriff, to testify at the hearing. Petitioner's brief, p. 12.

The record clearly shows not only that the requisite hearing was held prior to the admission of the taped confession; but also that Petitioner testified at the hearing.

7

Petitioner testified that the Sheriff did not threaten or offer him any reward before he gave the confession.  (R. 322) He further testified that he was *Mirandized* before giving the confession; he "voluntarily answered each question" asked by the Sheriff; and that the confession which he gave to the Sheriff was correct "with the exception of one or two minor things."  R. 323, 327.

At the conclusion of Petitioner's testimony, the trial court specifically asked, "Gentlemen, is there anything else on the issue?"  Petitioner's counsel responded, "We want to submit the authorities we have submitted." (R. 333.)

In short, there is no evidence that the trial court failed to conduct a full and fair *Jackson v. Denno* hearing, as claimed by Petitioner.  Additionally, the trial court had before it sufficient evidence to conclude that the taped confession was voluntary.

The second claim must be denied on its merits.

### C.  Third Claim

Petitioner's third claim (listed in his habeas petition as Section VI, at p. 17) is that after he had asserted his right to remain silent, law enforcement officials continued to interrogate him, culminating in the final interview by A.J. Lang in which Petitioner confessed.  Citing *Michigan v. Mosley*, 428 U.S. 96 (1975), Petitioner contends that the State violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.  This claim was not raised at trial or on direct appeal.

Petitioner has shown no cause for not having raised the claim earlier; and he

has shown no prejudice flowing from his failure to do so.  The claim is procedurally barred.

The third claim will be denied.

### D.  Fourth Claim

Petitioner's fourth claim (listed in his habeas petition as Section VII, at p. 17) is that after having invoked his right to counsel, the law enforcement officials continued to question him.  This continued questioning, he alleges, resulted in a confession obtained in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution.  He also maintains that Shirley Franklin was an agent of the State at the time he requested her to get a lawyer for him; and that her failure - i.e., the failure of the State - to do so also violated his rights under the aforementioned constitutional provisions.

On his direct appeal to the Alabama Court of Criminal Appeals, Petitioner advanced as his "Claim II" that his constitutional rights were violated by the receipt into evidence of "alleged confessions that, if given at all, were given by Petitioner involuntarily, and without the presence of counsel. . ."  *Thompson v. State*, 581 So.2d 1216, 1221 (Ala.Cr.App.1991)("*Thompson II*").  The specifics of this claim, however, were not raised during the trial or on direct appeal.

To the extent that the specifics of the claim were not raised on direct appeal or in the Rule 20 proceeding, the claim is likewise procedurally barred.  Otherwise, the generalities of the Fourth Claim are subsumed in discussion of the first three of his habeas claims.

9

The fourth claim will be denied.

### E.  The Fifth Claim

Petitioner's fifth claim (reflected in his habeas petition under Section VIII, at p. 17) is that his confession to Larry Fowler violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

On this issue, the Alabama Court of Criminal Appeals made the following findings:

> The statement made to Blount County authorities on January 7, 1985, is likewise admissible.  Officer Fowler testified outside the presence of the jury that he read the appellant his *Miranda* rights, that appellant stated that he understood those rights, that the appellant signed a waiver of rights form and made a statement to Fowler.  Fowler further testified that the appellant was not threatened, coerced, or otherwise induced into making a statement.  He stated that no promises were made to appellant. The appellant testified that Fowler did read him his *Miranda* rights and that he signed a waiver of rights form.

*Thompson v. State*, 503 So.2d 871, 878 (Ala.Cr.App.1986)(*"Thompson I"*).

These findings are entitled to a presumption of correctness.  The presumption has not been rebutted by clear and convincing evidence.

The fifth claim was thus adjudicated on the merits in the State courts, and the adjudication was neither unreasonable nor in contravention of clearly established federal law.

The fifth claim must be denied.

### F.  Sixth Claim

10

Petitioner's sixth claim (shown in habeas petition as Section IX, at p. 18) is that the State violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by failing to disclose exculpatory evidence and documents - particularly (a) the disclosure that Petitioner had initially refused to waive his *Miranda* rights and that he had refused to sign a *Miranda* form presented to him on January 5; (b) the disclosure that Shirley Franklin had become an agent of the State and that she had made an "implicit agreement" for immunity from prosecution; (c) the disclosure that Shirley Franklin or her husband would be paid a reward for acting as an informant and testifying against Petitioner; (d) the disclosure that eyewitness Jack Lee Roberts' description of the robber did not match Petitioner or his vehicle; and (e) the disclosure that of the tape of Roberts' hypnosis session.

Petitioner failed to raise in the state courts the allegation that the State failed to disclose evidence of his having initially failed to waive his *Miranda* rights - namely that it failed to produce the *Miranda* form which he declined to sign prior to giving the taped confession to the Etowah County Sheriff. Petitioner responds that the form was first produced to him during the Rule 20 proceeding and he did not have its benefit at trial. (R. 43. Petitioner's 1991 Certiorari Petition filed in the United States Supreme Court, p. 6. n.6). It is not clear that this aspect of the claim was presented to the Rule 20 court.

Whether or not the claim is procedurally barred, this Court determines it to be without merit. The Sheriff admitted in his trial testimony that before Petitioner gave him the taped confession, other law enforcement officials had talked with Petitioner. He knew that

11

Petitioner had been incarcerated twenty-four hours before he gave the taped confession and he had not given a confession to any of them. (R. 535.) Petitioner testified to the jury that during the twenty-four hour period, law enforcement officials had tried to get him to make a statement on the morning and afternoon following his arrest, and he had refused to do so. (R. 701, 702.) This fact was not disputed by the State at trial.

The *Miranda* form which Petitioner refused to sign would only have confirmed a fact which was not in dispute. Its non-disclosure was therefore not material to the voluntariness of his confession. It would have shown, at best, that he had refused to waive his *Miranda* rights before he talked to Shirley Franklin , thereafter changed his mind, for her sake, and voluntarily gave a taped confession to the Etowah County Sheriff.

The first aspect of the sixth claim is without merit.

The Alabama Court of Criminal Appeals erroneously held the four other aspects of this claim to be procedurally barred, concluding that they were not raised in Petitioner's Rule 20 petition. *Thompson II*, at 1219, n.4.[2]

The Rule 20 trial judge found that the immunity/reward aspects of the fifth claim lacked merit. *Thompson II* at 1223-1225. The finding is entitled to a presumption of correctness. The trial judge also found that Roberts' description of the robber and the tape of his questioning while under hypnosis were (1) not withheld, (2) not exculpatory, and (3) not material. More specifically, the judge found:

---

[2] In point of fact, these claims were raised in the Rule 20 petition. R. 33; CR 29-30.

... [T]he Roberts information, even taken as a whole, is clearly not material. Given Thompson's admission to his lawyers that he abducted Mrs. Gray and his trial testimony to the same effect, there is no reasonable probability that, but for the failure to produce the information obtained from Roberts, Thompson would not have been convicted and sentenced to death. Until the [Rule 20] hearing, Thompson had never denied being at the store and abducting Mrs. Gray. . . .

Finally, this evidence is not material because Thompson's latest version of the events on the night of the murder is false. The Court has observed Thompson's demeanor both at trial and at the hearing on this petition and he is not a credible witness. The Court credits Thompson's confessions as being the most accurate version of his actions. Thompson, who admits telling lies under oath at his trial, now says that the *real* version of what happened is that Ricky Pope was the guilty party. However, Pope, as shown by both his photograph and physical description on State's Exhibit 3, cannot be and is not the man described by Roberts. Therefore, there is no reasonable probability that, but for the absence of all the information from Roberts about what he saw, the outcome of Thompson's trial would have been different. This allegation lacks merit.

*Id.* at 1225. These findings are likewise entitled to a presumption of correctness.

The sixth claim must be denied.

### G. Seventh Claim

Petitioner's seventh claim (listed in his habeas petition as Section X at p. 20) is that he was denied his rights of due process and to a fair trial by the trial court's failure to instruct the jury on lesser-included offenses.

The Court of Criminal Appeals clearly and expressly held this claim to be

13

procedurally barred from review because it could have been, but was not, raised at trial or on direct appeal. *Id*. at 1219-1220, n.2.

Since there has been no showing of cause and prejudice, this claim is likewise barred in this Court.

The seventh claim must be denied.

### H.  Eighth Claim

Petitioner's eighth claim (listed in his habeas petition as Section XI, at p. 21) is that the seating of the victim's daughter at counsel's table during trial and the prosecutor's reference to her during closing arguments violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

The Court of Criminal Appeals clearly and expressly held that this claim was procedurally barred because it could have been raised at trial or on direct appeal but was not. *Id*., at 1218.

The eighth claim must be denied by this court.

### I.  Ninth Claim

Petitioner's ninth claim (listed in his habeas petition as XII, at p. 22) is that prosecutorial misconduct violated the rights guaranteed him by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The Court of Criminal Appeals clearly and expressly held the claim to be procedurally barred because while the claim was raised at trial, it was not raised on appeal.

14

The ninth claim must be denied by this Court.

## J.  Tenth Claim

In his tenth claim (listed in his habeas petition as XIII, at p. 24) the petitioner maintains that the trial court's manner of conducting the proceeding denied him a fair trial. Specifically, he asserts that the denial of a continuance, the restrictions on his counsel's cross examination of Shirley Franklin, unfounded accusations, adverse rulings, denigration and humiliation of his counsel in the jury's presence, all violated his right to counsel and due process.

The Court of Criminal Appeals made specific findings concerning the denial of the requested continuance to obtain Shirley Franklin's criminal records:

> A review of the record of the hearing indicates that the State made repeated efforts to get the information for the defendant prior to trial, that they finally had Ms. Franklin brought in and questioned and, in this tape recorded interview, she admitted a prior record in Indiana and that she had served six years, eight months and twenty-one days in jail. This information was then turned over to the defendant.
>
> * * *
>
> It is clear to the court that the trial court did not prejudice this defendant in any way by refusing to grant the motion for continuance. . . . [M]oreover, Ms. Franklin admitted her prior criminal record during her testimony, thus completing her impeachment. ..... The [petitioner] simply was not prejudiced by the trial court's refusal to grant his motion for a continuance.

*Thompson I* at 875, 876.

15

These findings are entitled to a presumption of correctness.

The same court also made findings which address the remaining aspects of the

tenth claim:

> After careful examination of the record, we can find no objectionable behavior by the trial judge. In no instance did he place any restrictions on defense counsel's right to a thorough and sifting cross-examination. . . . The trial judge imposed no restrictions whatsoever on defense counsel and his cross-examination of Shirley Franklin which would amount to an abuse of discretion.
>
> * * *
>
> An examination of the entire record reveals that the bulk of [the petitioner]'s objections were sustained by the trial court. It is equally clear that the trial judge did not single out the defense attorneys in his conduct of the trial.
> * * *
>
> The trial judge's admonitions to counsel and his overall conduct of the trial did not transcend his authority on any duty resting on him.
>
> * * *
>
> Moreover, the trial judge gave cautionary instructions to the jury not to allow his conduct to affect their verdict. Such action is sufficient to purge the taint of any prejudice that his actions might have caused.

*Id.* at 879, 880.

These findings are likewise entitled to a presumption of correctness.

The Tenth Claim must be denied.

### K.  Eleventh Claim

16

For his eleventh claim, (listed in his habeas petition as Section XIV, at p. 25) Petitioner says that the trial court's instructions to the jury were so confusing and convoluted that they violated this rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

The Court of Appeals clearly and expressly stated that this claim is procedurally barred because it could have been raised at trial or on direct appeal but was not. *Thompson II*, at 1218.

The eleventh claim must be denied.

### L.  Twelfth Claim

Petitioner's twelfth claim, (listed in his habeas petition as Section XV, at p. 25), that the trial judge's instructions concerning reasonable doubt violated his right to a fair trial, was not presented in the Alabama courts.  Thus, the state courts have never had the opportunity of addressing the claim.  The claim is procedurally barred.

The twelfth claim is denied on the merits.

### M.  Thirteenth Claim

Petitioner's thirteenth claim (listed in his habeas petition as Section XVI, at p. 26) is that the trial judge's instruction to the jury that its verdict was merely advisory deprived him of his right to a fair trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.

The Court of Criminal Appeals clearly and expressly found this claim to be

17

procedurally barred because it could have been, but was not, raised at trial or on direct appeal. *Id.* 1218, 1219.

The thirteenth claim must be denied.

### N. Fourteenth Claim

Petitioner's fourteenth claim (listed in his habeas petition as Section XVII, at p. 33), is that his constitutional rights were violated by the trial judge's failure to clearly instruct the jury that unanimity was not required in order to find the existence of a mitigating circumstance.

The state courts have not had the opportunity to address this claim, as it is presented for the first time in this petition.

The fourteenth claim will be denied, inasmuch as cause and prejudice have not been shown by Petitioner.

### O. Fifteenth Claim

Petitioner's fifteenth claim (listed in his habeas petition as Section XVIII, at p. 27), is that the Alabama statutory articulation of the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague.

The Court of Criminal Appeals clearly and expressly found that this claim is procedurally barred because it could have been, but was not, raised at trial or on direct appeal. *Id.*

The fifteenth claim must be denied, for want of Petitioner's showing of cause

and prejudice.

### P.  Sixteenth Claim

Petitioner next argues (in Section XIX, at p. 27 of his habeas petition) that the trial judge's reliance on the "especially heinous, atrocius, and cruel" formulation in sentencing him violated his right to a fair trial and to be free from cruel and unusual punishment.

This claim has never been presented to the state courts.

This court finds no merit in the sixteenth claim and it will be denied.

### Q.  Seventeenth Claim

As his seventeenth claim (listed in his habeas petition as Section XX, at p. 28), Petitioner asserts that the trial court failed to properly consider his consumption of alcohol and drugs, emotional disturbance, lack of a significant criminal record, and his age as mitigation circumstances, in violation of his rights of due process and to be free from cruel and unusual punishment.

On Petitioner's alleged lack of a significant criminal record, the Court of Criminal Appeals found that Petitioner "had some fourteen prior misdemeanor convictions. Such are sufficient to negate this mitigating circumstance." *Thompson I*, at 881.

The Court of Criminal Appeals also addressed the other aspects of this claim:

> [A] number of psychiatrists have examined this appellant and
> there was no finding that the appellant was suffering from any
> mental disturbance of such severity as to compromise his ability

to appreciate the criminality of his conduct or to conform his behavior to the requirements of the law on the occasion of the commission of the offense at issue. We agree with the trial court that voluntary intoxication will not constitute grounds for the mitigating circumstance in this cause. The appellant simply did not show that he was so intoxicated as to have rendered himself incapable of appreciating his conduct.

* * *

The appellant contends that his age should have been considered a mitigating circumstance. This appellant was 25 years of age at the time of the crime. The refusal to find this age to be a mitigating factor was proper.

* * *

The trial court considered all the evidence presented by the appellant. The fact that he refused to find as a mitigating circumstance the voluntary drug and alcohol abuse does not create reversible error. The trial judge simply did not view this behavior, as well as his unstable life, as a mitigating factor. It was within his discretion to so find.

*Id.* at 881, 882. These findings are entitled to a presumption of correctness. That

presumption has not been rebutted.

Petitioner's seventeenth claim must also be denied because it lacks merit.

### R. Eighteenth Claim

Petitioner's eighteenth claim is that in violation of his rights under the Fifth,

Sixth, Eighth, and Fourteenth Amendments to the Constitution, the trial judge considered the

pre-sentence report and evidence of his admission of uncharged crimes.

The Court of Criminal Appeals fully considered the aspect of the claim (listed

in the habeas petition as Section XXI, at p. 31) relating to the presentence report. It found

that the report should have been considered under Alabama's capital murder statute. This

finding and interpretation of Alabama law is entitled to a presumption of correctness.

Petitioner has never presented to the state courts that aspect of this claim which

relates to the admission at the penalty phase of evidence of Petitioner's admission of

robberies for which he had not been prosecuted.[3] The claim is therefore procedurally barred.

The eighteenth claim of Petitioner must be denied.

## S. Nineteenth Claim

Petitioner's nineteenth claim (listed in his habeas petition as Section XXII, at

p. 31), that the trial court erred by denying his motion for a change of venue, is procedurally

defaulted in this Court. The Court of Criminal Appeals clearly and expressly found that

while it was raised at trial, it was abandoned on appeal. *Thompson II*, 1219, 1219, n.3.

---

[3] Petitioner argued that this admission should not have been considered in determining mitigating circumstances. The Court of Criminal Appeals addressed the issue:

> Appellant further argues that the trial court erred in considering, in regard to the finding that this mitigating circumstance did not exist, the appellant's admission to a jailor that he had committed other armed robberies. It should be noted that the trial court also noted that the appellant had not been convicted of any prior felony offenses. Based on the finding of the other offenses which were more than sufficient to negate this circumstance, we fail to see how this has harmed this appellant. This court has held on at least one prior occasion that the inclusion of an improper aggravating circumstance should be considered harmless error.

*Id.* at 871.

The claim will also be denied for lack of merit.

### T.  Twentieth Claim

Petitioner's twentieth claim (listed in his habeas petition as Section XXIII, at p. 32) is that the trial court's denial of his motion to conduct individual *voir dire* of jurors and that its limitation of his examination of prospective jurors violated his right to an impartial jury.

Again, the Court of Criminal Appeals clearly and expressly found that while these claims were raised at trial, they were not raised on appeal. *Id*.

This claim must be denied, both on the merits and for procedural default.

### U.  Twenty-First Claim

Petitioner alleges as his twenty-first and final claim (listed in his habeas petition as Section XXIV, at p. 33) that he was denied the effective assistance of counsel at trial and on direct appeal. On this claim, the Court of Criminal Appeals wrote:

> We have carefully considered the appellant's assertions with reference to his representation by counsel. We conclude that he has failed to show either inadequate or ineffective representation by counsel at trial or on original appeal. The appellant failed to satisfy either prong of the test set forth in *Strickland v. Washington*, . . . .

*Thompson II*, at 1219, 1220. This court has reviewed the extensive findings of the Rule 20 judge on the ineffective assistance of counsel claim.

The Court will treat the various grounds of the claim *ad seriatim*.

22

(i)

Petitioner's allegation that trial counsel failed to conduct an appropriate pretrial

investigation.  The Rule 20 judge made extensive findings on this claim:

> [T]hompson alleges that trial counsel did not adequately investigate his case.  This allegation is contradicted by the evidence submitted at the Rule 20 hearing.
>
> Upon being appointed to represent Thompson in this case, trial counsel learned that Thompson had given a confession implicating himself as the sole perpetrator of this crime. Subsequent to that, trial counsel were told two or three different stories by Thompson as to what occurred on the night Maisie Gray was kidnapped, robbed, and murdered.  However, he always maintained that he was involved in the robbery and kidnapping, although he told his lawyers he did not murder Maisie Gray.
>
> Trial counsel repeatedly stressed to Thompson the importance of telling them the truth about what occurred on the night Maisie Gray was murdered.  State's Exhibit 1 clearly establishes this fact.  Thompson maintained that he did rob and kidnap Maisie Gray, but that Shirley Franklin actually murdered Maisie Gray. It was on this basis that trial counsel conducted their investigation and developed their strategy.
>
> Trial counsel testified, and this Court finds that testimony credible, that in preparing for this case, trial counsel interviewed law enforcement personnel involved in the investigation of this case; members of Thompson's family; Thompson himself; and, every person that Thompson named as being a possible witness for him in this case.  Trial counsel testified, and Defendant's Exhibit 20 and 21 reflect, that they visited the scene of the crime and searched for witnesses in the community.  Trial counsel did not find anyone in the community to testify on Thompson's behalf, except for two of his friends, Jackie Pope and Connie

Pope, and his mother, Joyce Parker.

Trial counsel spoke with Thompson's mother about Thompson's childhood and any traumas he may have experienced. The contrary testimony of Thompson's mother, Joyce Parker, is not credible because, based on her testimony and demeanor, she was biased and not a credible witness. In their many hours of discussion with Thompson, trial counsel also asked Thompson about his childhood, educational background, drug and alcohol problem, and religious background. Thompson's testimony to the contrary is not credible.

In addition, trial counsel filed many pretrial motions, including a motion to produce. Their motion to produce was granted and they reviewed material in the District Attorney's file. The trial attorneys also researched the legal and factual issues they anticipated would arise before and during trial.

Trial counsel filed the motions for psychiatric examination because this was a capital case and because they felt it would help them establish a diminished capacity defense. Trial counsel's motion for psychiatric examination and motion for independent psychiatric examination were both granted and Thompson was evaluated at Taylor Hardin Secure Medical Facility by a lunacy commission and by a private psychiatrist hired by trial counsel, Dr. R.A. Slesynski.

In general, trial counsel's performance in investigating Thompson's case was thorough and Thompson has not demonstrated that trial counsel's performance was "outside the wide range of professionally competent assistance." He has not shown his trial counsel's performance was deficient with respect to his two specific allegations of inadequate investigation.

*Thompson II*, at 1230, 1231.

(ii)

The allegation that counsel failed to devise and implement reasonable trial

24

strategy was also the subject of findings by the Rule 20 court:

> Thompson alleges that his trial counsel were ineffective because they failed to adequately prepare, investigate, pursue, and present a defense strategy at the guilt phase of his trial. This allegation is without merit.
>
> In support of this claim, Thompson presented expert testimony by Richard Jaffe, a criminal defense attorney practicing in Birmingham, hired by Thompson's present attorneys. It was Jaffe's opinion that trial counsel did not have a reasonable trial strategy and therefore rendered ineffective assistance. Jaffe was uncertain about the standard used to determine ineffective assistance claims under Strickland, and indicated that his opinions were not based solely on Strickland. Jaffe also testified that it is necessary to rely on information from your client in formulating a defense strategy and that he relies on such information in developing trial strategies. He also admitted that it is difficult to develop a defense strategy when there is a confession that is inconsistent with what your client has told you has occurred. Finally, Jaffe testified that it is not unusual for attorneys to disagree about how to conduct a defense and that just because the attorneys disagree doesn't mean that one strategy is right and the other is wrong.
>
> As was discussed [supra], trial counsel developed their trial strategy based on the fact that Thompson continually maintained that he robbed and kidnapped Maisie Gray but that Shirley Franklin actually shot and killed Maisie Gray. Trial counsel's strategy at the guilt stage was to present evidence of Thompson's limited participation in the crime, to implicate Shirley Franklin as the murderer; and to present evidence of Thompson claims in paragraph 19(g) that trial counsel were specifically ineffective in their defense strategy because they failed to prepare Thompson to testify. This Court finds as a fact that trial counsel adequately discussed and prepared Thompson for trial and advised him of the defense strategy to be followed in this case. Trial counsel even went over the specific questions Thompson would be asked by them at trial. Therefore, trial

25

counsel's performance was not deficient as to this specific claim. Further, Thompson has not demonstrated that, but for counsel's performance, the outcome of the trial would have been different. Thompson presented no evidence at the evidentiary hearing establishing that he was unprepared to testify or as to how a lack of preparation affected his trial.

*Id.* at 1234, 1235.

These findings are entitled to the presumption of correctness. They have not

been rebutted.

(iii)

Petitioner next asserts that his counsel's concession in opening statement of his

participation in the crimes deprived him of the effective assistance of counsel.

The Rule 20 court made the following findings:

Thompson claims that trial counsel was ineffective because it was admitted in opening statement that Thompson had kidnapped and robbed Maisie Gray and was present during her murder. Thompson presented testimony from Richard Jaffe regarding this specific allegation. It was Jaffe's opinion that trial counsel was ineffective for conceding guilt in opening statements. This Court rejects that opinion and finds that it was a reasonable strategic decision to admit Thompson's limited guilt in opening statements in order to diminish the impact of the evidence presented during trial, especially in light of trial counsel's defense strategy to admit limited participation and argue that Thompson was less culpable than Shirley Franklin.

Thompson has also not shown that trial counsel's decision to admit guilt in the robbery and kidnapping, but to deny participation in the murder prejudiced his defense. In light of the fact that there was evidence presented at trial that Thompson did participate in the robbery/kidnapping/murder of Maisie Gray

26

> in the form of his confession, the testimony of Shirley Franklin, and Thompson's own testimony, he has failed to demonstrate any prejudice from his counsel's opening argument admitting participation in the crime.

*Id.* at 1234, 235.

These unrebutted findings negate this contention.

(iv)

Petitioner alleges that his trial counsel failed to communicate with him and to give competent and sound advice concerning the charges pending against him.

The Rule 20 court made extensive findings on this issue:

> Thompson alleges that Dobson and McPherson failed to adequately communicate with him before, during, and after trial. This allegation is contradicted by the evidence at the Rule 20 evidentiary hearing.

> Prior to trial, McPherson and Dobson met with Thompson extensively. In those meetings with Thompson, his trial attorneys discussed trial strategy and his defense with him. Trial procedures were also discussed with Thompson. State's Exhibit 1, which is a transcript of a conversation between Thompson and his attorneys prior to Thompson's trial, which was taped by trial counsel, reveals that defense decision were discussed with Thompson. For example, trial counsel discussed with Thompson whether he wanted his statement of the events surrounding the crime, as given to his attorneys, turned over to the sheriff's office. It also reveals that trial counsel explained to Thompson the possible consequences of turning over that statement, which incriminated Shirley Franklin.

> The transcript reveals that Thompson's version of the events on

27

the night of the crime were discussed with him in detail; a description given by a witness who was on the scene prior to the victim being reported missing was discussed with him; and, the various motions to be filed were discussed with him. State's Exhibit 1 also reveals that a possible insanity or diminished capacity defense was discussed with Thompson and the procedures required to establish such a defense were explained and discussed with Thompson.

In addition, McPherson and Dobson testified that they met and discussed the trial and Thompson's defense during trial, each morning before trial began, and each evening after proceedings were adjourned. This Court finds that the testimony of John Dobson and B.J. McPherson that they communicated with Thompson regarding his defense and trial procedures is credible, and that Thompson's testimony to the contrary is not credible. The evidence reveals that trial counsel were very conscientious in their communication with Thompson and in advising him of trial procedures. Thompson has failed to establish that his trial counsel's performance was deficient in their communication with Thompson.

Thompson has also failed to establish that he was prejudiced by any failure of his trial counsel to communicate with him. Thompson presented no evidence that his trial counsel failed to communicate anything to him that would have made a difference in the outcome of his trial. Thompson did not prove a reasonable probability that, but for trial counsel's failure to communicate some information to him, the outcome of his trial would have been different.

*Id.* at 1228, 1229.

Again, these findings are entitled to a presumption of correctness.

(v)

Petitioner contends that his counsel failed to research basic Alabama and

federal law, to present evidence, and to make appropriate objections to the admissibility of his confessions.

This contention is utterly without merit.

(vi)

Petitioner contends that his counsel failed to obtain expert psychiatric testimony.

The Rule 20 court found that Petitioner's counsel "asked for and received both a lunacy evaluation of Thompson at Taylor Hardin Secure Medical Facility and a private psychiatric examination by an examiner of their own choosing, Dr. R.A. Sleszynski." *Id.* at 1241.

The contention is without merit.

(vii)

Petitioner also criticizes his counsel's performance as ineffective based on the "Elicitation of Inflammatory Irrelevant and Highly Prejudicial Information" concerning him.

Based on this Court's review of the record, the contention is without merit.

(viii)

Petitioner contends that his counsel were ineffective because they did not object to the presence of the victim's daughter at the district attorney's table during trial and the State's reference to the victim's daughter in summation.

The contention is without merit.  <u>See,</u> Code of Alabama 1975 § 15-14-56.

29

(ix)

Petitioner's next contention is that his counsel failed to adequately prepare his testimony and to elicit necessary information.

The contention is without merit.

(x)

Petitioner next contends that his trial counsel distanced themselves from him at trial and inflamed the jury against him.

The Rule 20 court found:

Thompson alleges that his trial counsel were ineffective because they improperly distanced themselves from Thompson throughout the trial as demonstrated by references to their appointment as trial counsel and by a reference in closing argument to the heinousness of the crime. This allegation is without merit.

Trial counsel told the jury that they were appointed before asking the jury voir dire questions and during opening statements. It simply is not deficient performance to advise a jury that trial counsel was appointed to represent a defendant. Even if it were deficient performance, Thompson has not demonstrated that it affected the outcome of his trial and has, therefore, not met the prejudice requirement of Strickland.

In closing, McPherson told the jury:
And in conclusion, Mr. Dobson and I are not condoning the acts of Michael Thompson in robbing Maisie Gray, in kidnapping her, and I want to say here and now to her family, that our sympathy goes out to them. And they have our sympathy. And this has been one of the most difficult tasks that I have had to do since standing in front of this bar for 17 years. But every defendant, no matter who he is, no matter how horrible, how

30

> heinous, how atrocious the crime he is charged with, he is
> entitled to the very best of the law and the Constitution of the
> United States.
>
> Thompson alleges this argument by his trial counsel
> demonstrated a desire by counsel to distance themselves from
> him. Thompson's expert, Richard Jaffe, testified that in his
> opinion this argument was ineffective. This argument is
> consistent with trial counsel's defense strategy to admit guilt as
> to the robbery and kidnapping but to argue lesser culpability
> because of no participation in the murder. Further, even if this
> argument does demonstrate deficient performance by trial
> counsel, Thompson has not demonstrated that this brief
> comment undermines confidence in the outcome of Thompson's
> trial. No prejudice has been demonstrated by Thompson.

*Id.* at 1237.

These findings are entitled to the presumption of correctness.

The contention is without merit.

(xi)

Petitioner next contends that he was denied the effective assistance of counsel

because his counsel failed to object to improper and inflammatory comments of the

prosecutor.

The Rule 20 Court made the factual findings on this issue:

> Both trial counsel testified that they had a general policy of not
> objecting to closing argument unless it is prejudicial to a client
> because objections tend to draw attention to and emphasize that
> argument to the jury. It was also McPherson's opinion that
> objections during closing arguments can detract from gaining
> sympathy for a client from the jury. These are reasonable
> strategic reasons for not objecting to prosecutorial argument.

31

In order to prevail on a claim of ineffective assistance of counsel for failure to object to prosecutorial argument, Thompson must prove prejudice.   The standard for determining whether prosecutorial argument entitles a petitioner to relief is whether there is a reasonable probability that the statements rendered the proceeding fundamentally unfair.   Thompson alleges ten instances of improper argument in the petition.

Thompson's contention, that the prosecutor's assertions of opinion concerning the veracity of the defendant's testimony, i.e., repeated statements that the defendant had lied to the jury, were improper, is without merit.   There was evidence that Thompson had changed his story regarding the events surrounding the robbery/kidnapping/murder of Maisie Gray and there was direct evidence impeaching his testimony at trial. The fact is that Thompson had lied and there was evidence of that presented in this case.   The prosecutor's comments on the evidence were not improper.

Thompson's contention, that the prosecutor's discussion of the Biblical law of punishment, based upon the maxim an eye for an eye, a tooth for a tooth, a life for a life was improper, is without merit.   Where defense counsel have argued Biblical law as Thompson's counsel did in closing, prosecution argument replying to those arguments [is] not improper.

[T]he prosecutor's arguments that the defense counsel did what they were supposed to do; that "I helped chose you"; and that "I take part in this as if I were on the jury" were not improper. These comments taken in context were arguments for the jury to do its duty.   Arguments to the jury to carry out their proper function are not improper.

Thompson's contention, that the prosecutor improperly argued that Thompson might commit future crimes if turned loose and that the jury needed to rid the county of people like the defendant so that people can live without fear of his committing another crime ..., is without merit. These are proper deterrance arguments. Trial counsel are not obliged to object to proper

32

argument.

> Thompson's trial lawyers did not render ineffective assistance by not objecting to the prosecutor's comment on Thompson's criminal ego. Even if this argument was improper, trial counsel's performance was not deficient. Thompson was not entitled to a perfect trial but rather a fair one and the absence of an objection to this one brief comment did not render his trial unfair.
>
> Thompson's lawyers were also not ineffective in failing to object to references to the victim's family. As noted above, Thompson's trial lawyers were not required to object based on predictions as to how the law might develop. Therefore, his lawyers' performance was not deficient and this allegation, like the rest above, lacks merits.

*Id.* 1243.

Petitioner's contention in this regard is belied by these presumptively correct factual findings; moreover it is without merit.

(xi)

Petitioner contends that his counsel failed to prepare closing argument.

The contention is without merit.

(xii)

Petitioner contends that he was denied the effective assistance of counsel when his counsel failed to object or move for a mistrial after a statement made in the presence of the jury by the Sheriff of Blount County.

The Rule 20 court made factual findings on this issue:

33

Thompson alleges his trial counsel were ineffective because they failed to object to, or seek a mistrial as a result of, improper statements made by the Blount County Sheriff at Thompson's trial, in the presence of the jury, to the effect that a witness would not "come in and lie" for Thompson. Thompson testified to this alleged incident at the evidentiary hearing. This Court finds as a fact that Thompson was not a credible witness and that this allegation is without merit.

Thompson claimed that Blount County Sheriff J.C. Carr was in the courtroom and the jury was present when the Sheriff told him that Rickey Pope, a possible defense witness, was not coming to testify and said that Rickey would not come in and lie for him. Thompson claimed that the judge and defense and prosecution counsel were in chambers, out of the courtroom when this incident occurred. Thompson claimed that when the judge and counsel returned to the courtroom, he told Dobson about this incident but Dodson did nothing about it.

Trial counsel testified that they had no recollection of the events that Thompson described. Dobson testified that he recalled Thompson telling him about something an officer said to him but does not recall that the jury was present. He also testified that it is not the practice in Blount County, and this Court finds that it is not the practice in Blount County, to leave a jury in the courtroom alone with the defendant. Dobson testified, and this Court finds as a fact, that Thompson also sat at the table farthest from the jury, so that even if Sheriff Carr had made the comment Thompson claims that he did, it was not likely that the jury heard the comment.

Based on the testimony, and the demeanor of the witnesses, this Court finds that the incident described by Thompson did not occur and that trial counsel's performance was not deficient in not objecting to a statement and incident which did not occur.

*Id.* at 1239, 1240.

These presumptively correct factual findings defeat Petitioner's contention.

(xiii)

Petitioner contends that he was denied the effective assistance of counsel by his counsel's failure to request appropriate jury instructions. Specifically, he alleges that his counsel failed to request an instruction that the jury could find him guilty of non-capital felony murder if it concluded that he lacked the requisite intent to commit first degree murder.

This allegation could have been but was not raised at trial or on direct appeal. The Rule 20 court and the Court of Criminal Appeals clearly and expressly found that the claim was procedurally barred. *Id.* at 1219, 1222.

(xiv)

Petitioner next contends that he was denied the effective assistance of counsel in that his counsel failed to present an effective defense at the penalty stage.

The factual findings of the Rule 20 court preclude any relief on this contention:

> [T]hompson alleges his trial counsel were ineffective because they failed to prepare, investigate, and present a penalty phase defense strategy and effectively make a case for saving Thompson's live and this allegation is without merit.
>
> Thompson presented the testimony of Richard Jaffe in support of this claim. It was Jaffe's opinion that trial counsel should have made additional use of Thompson's addiction and substance abuse, and evidence of his violent background at the penalty phase of his trial. Jaffe testified that trial counsel were ineffective for failing to offer a meaningful mitigation defense. In his opinion, trial counsel should have pursued further, through investigation, the report of the private psychiatrist hired

35

by them; should have called neighbors and friends of Thompson's to testify on his behalf; and should have looked at Thompson's school and medical records for possible mitigation. This court rejects Jaffe's opinion that trial counsel failed to present a meaningful penalty phase defense and credits the testimony of Thompson's trial counsel on this issue.

Trial counsel knew before trial that there was a guilt phase and a penalty phase to a capital murder trial and they prepared for both phases prior to trial. The defenses to both phases were similar. As at the guilt phase, trial counsel presented evidence of Thompson's diminished capacity at the penalty phase through the testimony of his mother regarding his drug and alcohol abuse. Trial counsel also presented testimony regarding the effects of Thompson's father's death on him, in an attempt to garner sympathy for Thompson.

In addition, trial counsel spoke with family members, friends, people in the community, and anyone Thompson told them to talk to in an attempt to discover any possible mitigation. This investigation was unsuccessful.     They also questioned Thompson about his religious affiliation and he denied any. Finally, trial counsel also made a motion for psychiatric examination and motion for independent psychiatric examination, both of which were granted by this Court. Trial counsel considered these reports and spoke with Dr. Sleszynski, the private psychiatrist hired by them. Based on the reports and their discussions with Dr. Sleszynski, they made a strategic decision not to present this evidence. This was a reasonable strategic decision, as is discussed more fully below.

Thompson has failed to demonstrate that trial counsel's performance was deficient.     They investigated possible mitigating circumstances prior to trial, and based on what they found from this investigation, developed their penalty phase defense strategy. Because of the problems in discovering any witnesses who would come forward to testify on Thompson's behalf, and because Thompson adamantly refused to testify before the jury at the sentence phase, trial counsel presented the

only witness in mitigation that they had, Joyce Parker, Thompson's mother. This was not deficient performance by trial counsel.

Thompson has also failed to establish prejudice. At the evidentiary hearing, Thompson presented several witnesses to demonstrate that trial counsel's investigation was inadequate and as a result his case was prejudiced. Thompson took the stand and testified about his drug and alcohol problems; about his traumatic upbringing in a violent household; about his religious experiences; about head injuries he received as a child; about the effects of his father's death on him; and about other traumatic experiences growing up. Thompson testified that he did not tell his trial counsel about these experiences because they did not ask him about it. He also testified that he was not given the opportunity to testify at the penalty phase of his trial. It is also contradicted by trial counsel's testimony at the evidentiary hearing. This Court finds that trial counsel asked Thompson about his background in an attempt to discover evidence to present in mitigation and he failed to reveal to them the information regarding his background that he testified to at the evidentiary hearing. The Court find that the absence of this evidence at trial is attributable to Thompson's refusal to testify and not any deficiency in his counsel's performance.

The Court also finds that had Thompson presented this testimony to the jury, there is no reasonable probability that the outcome of his trial would have been different, because of the overwhelming evidence against Thompson and because there is no reasonable probability that the jury would have recommended anything but a sentence of death.

*Id.* at 1238, 1239.

The findings are entitled to a presumption of correctness, and that presumption has not been rebutted.

(xv)

37

Petitioner maintains that he was denied the effective assistance of counsel because his counsel failed to adequately seek a change of venue.

The change of venue claim itself was clearly and expressly found by the Alabama courts to be procedurally barred. *Id.* 1223.

The Alabama courts also addressed the issue on the claim of ineffective assistance:

> Thompson alleges his trial counsel were ineffective because they failed to adequately seek a change of venue. This allegation is without merit.
>
> Trial counsel filed a motion for change of venue and were heard on that motion on September 25, 1985. This Court took that motion under advisement and reserved ruling until after jury voir dire. After jury voir dire, trial counsel renewed the motion for change of venue, predicated on the responses of potential jurors to questions posed during voir dire. This Court denied that motion again based on the fact that all jurors indicated that they could put aside anything they had read, heard, or seen about the case and decide the case based on the evidence presented in Court.
>
> At the evidentiary hearing in this case, Thompson introduced 37 articles from several different news sources in support of this claim. The articles were from the Gadsden Times, The Birmingham News, Birmingham Post-Herald, and the Southern Democrat. No evidence was presented regarding circulation figures in Blount county or how often each paper issued. This Court finds that the 37 articles are fact-based and are not sensational or inflammatory.
>
> Trial counsel's performance was not deficient with respect to requesting a change of venue. Trial counsel did in fact request a change of venue prior to trial and subsequent to jury voir dire. Trial counsel properly sought to base their motion on voir dire

responses. Trial counsel's performance was not deficient.

Further, Thompson has failed to establish prejudice. Before he can establish that he was entitled to a change of venue, "the defendant in a criminal case has the burden of showing there was such prejudice prevailing in the community where his trial was set that a fair and impartial trial could not be had." *McLaren v. State*, 353 So.2d 24, 31 (Ala.Cr.App.1977), cert. denied, 353 So.2d 35 (Ala.1977). Because Thompson has failed to show that a fair and impartial jury could not be had in his case in Blount County, he has failed to establish that he was prejudiced by this trial counsel's failure in connection with the motion for change of venue.

[A]ll that petitioner presented at the evidentiary hearing in support of his contention that trial counsel should have obtained a change of venue were some newspaper articles. As the Alabama Court of Criminal Appeals has held:
Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. *Patton v. State*, 246 Ala. 639, 21 So.2d 844 (1945).
*McLaren v. State*, 353 So.2d, at 31. The fact that a case generates even widespread publicity does not warrant a change of venue. E.g., *Waldrop v. State*, 459 So.2d 953, 955 (Ala.Cr.App.1983), aff'd, 459 So.2d 959 (Ala.1984); *Sparks v. State*, 450 So.2d 188, 191 (Ala.Cr.App.1984), cert. denied, No. 83-687 (Ala.1984). Newspaper stories that are not inflammatory or sensational do not warrant a change of venue. *Primm v. State*, 473 So.2d 1149, 1155 (Ala.Cr.App.1984), cert. denied, No. 84-906 (Ala. 1985); *McLaren v. State*, 353 So.2d 24, 31 (Ala.Cr.App.1977), cert. denied, 353 So.2d 35 (Ala.1977). Thompson's evidence failed to establish that he was entitled to a change of venue and, therefore, he has failed to establish a reasonable probability that, but for the absence of a properly supported motion for a change of venue, the outcome of his trial would have been different. Because he cannot show

that he was prejudiced, this claim is without merit.

*Id.* at 1233, 1234.

This contention is belied by the unrebutted factual findings of the Rule 20 court, and it is without merit.

(xvi)

Petitioner contends that he was denied the effective assistance of counsel by his counsel's failure to object to the prosecutor's improper and arbitrary use of cause challenges.

The Rule 20 court made specific findings on this contention:

Thompson alleges his trial counsel were ineffective because they failed to object to the prosecutor's improper and arbitrary exercise of cause challenges against some venire members. Thompson offered no testimony as to this claim at the evidentiary hearing and this allegation is without merit.

Only three potential jurors were challenged for cause during jury voir dire in this case. All three challenges were made by Thompson's trial counsel. Because the State did not challenge any individuals for cause, trial counsel's performance was not deficient for failing to object to any cause challenges by the State. Thompson also cannot demonstrate that but for trial counsel's performance, the outcome of his trial would have been different and has therefore failed to prove prejudice.

*Id.* at 1234.

These findings are entitled to a presumption of correctness. They have not been rebutted.

40

Moreover, this contention is manifestly without merit.

(xvii)

Petitioner next contends that he was denied the effective assistance of counsel because of his counsel's failure to investigate and cross-examine the State's witnesses.

Again, the Rule 20 court made factual findings on this contention:

> Thompson alleges that his trial counsel were ineffective because they failed to adequately cross-examine critical State witnesses whose testimony had to be challenged to protect Thompson's interests and rights. Thompson did not indicate which State witnesses were not adequately cross-examined. However, this Court finds that trial counsel's cross-examination of the State's witnesses were adequate and, especially with respect to Shirley Franklin and law enforcement officers, were thorough.
>
> Because Thompson has not demonstrated what additional cross-examination should have been done or what cross-examination was improper, he has failed to establish that his lawyers' performance was deficient or that he was prejudiced by his lawyers' performance.

*Id.* at 1235, 1236.

A presumption of correctness attached to these findings and it has not been rebutted by Petitioner.

(xviii)

As his last contention on the alleged ineffectiveness of counsel, Petitioner asserts that he was denied the effectiveness of counsel on appeal.

The Rule 20 court made factual findings on this contention:

41

Thompson alleges his appellate counsel, John Dobson and B.J. McPherson, were ineffective because they failed to adequately prepare Thompson's appeal and because they failed to raise certain issues on appeal. Thompson's appellate counsel's performance in preparing and effectuating his appeal was not deficient.

Dobson testified that prior to preparing the appellate brief in this case, he reviewed the entire record and wrote down all the adverse rulings made by this Court. He then researched all possible claims and decided based on that research to raise those claims he thought were likely to succeed. Dobson testified that he didn't raise several of the issues Thompson now claims he should have raised based on the law and his likelihood of success of the merits. In particular, he testified that he did not raise the venue issue; and the improper closing argument issue because based on, his research, those issues would not have been successful on the merits. This Court finds that trial counsel ably researched and prepared Thompson's appeal in this case.

A lawyer is not required to raise all conceivable claims in order to render effective assistance. *Lindsey v. Smith*, 820 F.2d 1137, 1144 (11th Cir.1987). It is sound strategy for a lawyer to narrow the number of issues on appeal. This type of winnowing out of weaker arguments in favor of those arguments likely to succeed is the type of effective appellate advocacy approved by the United States Supreme Court. The fact that Dobson and McPherson focused on issues other than those Thompson's current counsel has selected does not remove their representation of Thompson from the wide range of professionally competent assistance.

Thompson failed to establish that Thompson rendered ineffective assistance of counsel at trial or on appeal. He is not entitled to relief on any of his ineffective assistance of counsel claims.

*Id*. at 1244.

42

The presumption of correctness of these findings, unrebuted by Petitioner, carries the day.

The contention is without merit.

Conclusion

For all of the reasons discussed in this Memorandum Opinion, Petitioner's application for a writ of habeas corpus has been denied.

DONE this _____27th_____ day of March, 2000.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON

43